**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

MIKE EDWARD BARROWMAN,            )
                                  )
            Plaintiff,            )
                                  )
                                  )   Case No. CIV-20-274-RAW-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Mike Edward Barrowman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 51 years old at the time of the ALJ's decision. He has a sixth-grade education and worked in the past as a front-end loader/operator, backhoe operator, and kiln burner. Claimant alleges an inability to work beginning on February 2, 2017, due to limitations resulting from back problems (ruptured vertebrae) and a learning disability.

### Procedural History

On February 6, 2018, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 30, 2019, ALJ Doug Gabbard, II, conducted

a hearing in McAlester, Oklahoma, at which Claimant testified. On July 17, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 5, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by disregarding Claimant's subjective complaints of pain and mischaracterizing his hearing testimony.

## Evaluation of Subjective Complaints

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease and a neurodevelopment disorder. (Tr. 19). He determined Claimant could perform light work with additional limitations. Claimant was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. He could perform unskilled work that was simple, repetitive, and routine. Claimant could work with normal

4

supervision which was respectful and uncritical, and his interpersonal contact with supervisors and co-workers must be incidental to the work performed (e.g., assembly work). Claimant would perform best in a work setting where he is frequently alone, and he must not be required to work at fast-paced production line speeds. He should have only occasional, gradual introduction to work place changes, and he must have normal, regular work breaks. Claimant should have no contact with the general public. (Tr. 21).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of marker, motel housekeeper, and small product assembler, which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant has not been under a disability since February 6, 2018, the date the application was filed. (Tr. 26).

Claimant contends that when evaluating his subjective complaints, the ALJ failed to supply "any rationale as to why [Claimant's] conservative and minimal medical treatment and activities of daily living [were] inconsistent with his hearing testimony and the record[,]" and merely relied upon "boilerplate language." *See* Opening Brief, p. 5 (Docket Entry #20). He asserts that the ALJ did not provide the required link between the rejection of Claimant's subjective complaints and the evidence. *Id.* at 6.

5

Claimant specifically argues that the ALJ's reliance on his lack of treatment and the conservative nature of his treatment was a mischaracterization of the evidence, as Claimant testified he did not have insurance and could not afford to pursue treatment and that his use of ibuprofen for pain did not alleviate his pain. He further asserts that his performance of minimal activities of daily living was not inconsistent with his subjective complaints of pain and should not have been relied upon by the ALJ.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 21). He determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record.

In making these determinations, the ALJ summarized Claimant's testimony:

> [T]he [C]laimant testified at the hearing he was unable to work because he is unable to do things as fast as he could before. If it involved anything strenuous, he could be down for days afterward because of his back pain. He had a surgery in the past; however, his pain just started getting worse and worse. He has tried to do what he could do. If he sweeps the floor, he may not be able to get out of the chair the next day. His pain usually runs at a 3 or 4 on average but severe days it is a 7 or 8. He takes ibuprofen for pain because he doesn't have insurance; however, the over the counter ibuprofen knocks it down to a 3 or 4. He has pain that radiates to his shoulder, back and hands. He experiences burning and tingling, but not numbness. He can reach overhead, but only for a few seconds. He can reach out and to the side, but sometimes it is difficult to get a gallon of milk from the fridge. He also experiences pain in his hips. Walking up stairs makes it worse.

(Tr. 21-22, 43-51).

The ALJ also discussed the medical evidence. He noted Claimant's treatment for back and neck pain and his anterior

7

cervical discectomy and fusion that was part of a workers' compensation claim. (Tr. 22, 282-96). He discussed an X-ray of Claimant's cervical spine from 2015, wherein the impression was that Claimant had no acute pathology. (Tr. 22, 319). He referenced Claimant's treatment records from December of 2018, noting that other than examinations through the social security process, this was the only other occasion Claimant sought medical care. The ALJ specifically noted Claimant's testimony that he had no insurance and could therefore not go to a doctor, but Claimant also testified he was aware of a free clinic in Wewoka and had thought about going there, but he had not. (Tr. 22, 45-46). At his December of 2018 appointment, Claimant complained of worsening back pain over the past year. He noted his prior fusion, indicating that he now had low back pain. Claimant reported that standing and bending made his pain worse and that he slept in a recliner because it was more comfortable. His examination revealed tenderness to palpation with a positive straight leg raise test at 45 degrees, but he exhibited normal spine range of motion and normal paraspinal muscle strength and tone. Claimant was assessed with chronic bilateral low back pain without sciatica and was ordered to undergo imaging of his spine and evaluation for physical therapy. He also received a depo-Medrol injection and was prescribed Naprosyn. (Tr. 22, 315-18).

    The ALJ further summarized the examination findings of consulting physician Christopher Sudduth, M.D. and consulting

psychologist William Bryant, Ph.D. Claimant was examined by Dr. Sudduth on May 4, 2018, at which time he reported a history of neck and back pain that rated a 7 to 8 on a scale of 1 to 10. Nothing relieved his pain and staying in the same place made it worse. Claimant reported this affected his ability to work secondary to an inability to lift heavy objects or walk for long periods of time. He reported a long-term learning disability, including participation in special education in school, affecting his ability to work because of his difficulty with reading and his inability to use a computer. His daily activities included watching television and resting. Claimant reported that he could sit for twenty minutes, stand for ten minutes, walk for a half block to one block, and lift and carry one to five pounds repetitively and fifteen to twenty pounds occasionally. He experienced limitations when traveling and handling, and he stumbled over his feet.

    Claimant's examination by Dr. Sudduth revealed a moderate to severe reduced range of motion in his lumbar spine, a severe decreased range of motion in the cervical spine, and a significant decreased range of motion in the hips, but Claimant had a steady gait and good hand-eye coordination, did not utilize an assistive device, had no palpable muscle spasms, and his muscle bulk, tone, and strength were within normal limits. His straight leg raise test was positive bilaterally in the sitting and supine positions, but his sensory examination was normal. He exhibited pain in the

9

cervical and lumbar spine, but no joint swelling, erythema, effusion, or deformity. His hands and fingers appeared normal, as Claimant could button and unbutton a shirt, pick up and grasp a pen, and lift, carry, and handle his personal belongings. Although he could not read or write, he could print his initials and his girlfriend was teaching him to read and write. Claimant could not heel-toe walk, but he had normal tandem gait. He could squat with difficulty, and he could not hop on one foot. He could stand and balance on one foot. (Tr. 22, 298-305).

Claimant underwent a mental status examination and intelligence testing with Dr. Bryant on May 10, 2018. Dr. Bryant observed that Claimant was dressed inappropriately in a cut-off t-shirt, basketball shorts, and flip flops, because this was easy and did not require him to button his shirt or tie his shoes. Claimant reported that he dropped out of school in sixth grade and could not read or write. He indicated he suffered from dyslexia and participated in special education classes. Claimant served time in prison for possession of methamphetamine. He reported hearing his name called but denied any hallucinations. When Claimant sees people whispering, he thinks they are talking about him or plotting against him, and he sometimes thinks his girlfriend is cheating on him. Claimant could perform some mental tasks, including naming five presidents and five large cities, but he had some trouble with memory, struggled with some abstraction, and had

a full scale IQ score of 75. Dr. Bryant noted Claimant did not have a thought or mood disorder, but he did have "some left over mild suspiciousness from his drug culture days." He assessed Claimant with methamphetamine and marijuana use in stable remission and borderline intellectual functioning. He stated that Claimant had probable diagnoses for a reading disability and specific math learning disability. Dr. Bryant indicated Claimant could not manage his own benefits, he was not a malinger, and his physical disabilities were credible. (Tr. 23, 308-12).

After summarizing the evidence, the ALJ concluded that "[C]laimant's statements about the intensity, persistence, and limiting effects of his symptoms are somewhat inconsistent with the longitudinal record of evidence." (Tr. 23). He provided the following rationale for his conclusion:

> [T]he [C]laimant does indeed suffer from limitations; however, his own conservative treatment of same through ibuprofen; improvement of pain with same; objective observations noting normal gait and strength; and minimal medical treatment are not consistent with his incredibly limiting allegations such as not being able to stand or walk for 10 minutes and not being able to sit for more than 20 minutes. Moreover, his reports and testimony throughout the record are somewhat conflicting as noted above. For example, the [C]laimant reported reaching limitations and trouble in his shoulder; however, he primarily complained of lower back pain to physicians. Claimant reported several physical limitations to the psychologist which conflict with what he told the physical examiner: He reported he rides his lawn mower for 30 minutes to an hour; however, he told the other examiner he could only sit for 20 minutes. Moreover, he testified he has burning and tingling in hands but not numbness and could still do mostly all

>    activity with same; however, he told the psychologist he had trouble with a number of those activities.

(Tr. 23).

The ALJ's evaluation of Claimant's pain or other symptoms reveals that he relied upon the appropriate factors in assessing Claimant's statements and provided links to the evidence to support his findings. Based upon the evidence of record, the ALJ concluded Claimant had an RFC to perform light work, including additional postural limitations related to Claimant's physical impairments and complaints of pain and mental limitations related to Claimant's mental impairment. (Tr. 24). The Court finds no error in the ALJ's assessment of Claimant's subjective complaints.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of January, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE